PHILIP J. AND KATHERINE T. CHARLEY, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Charley v. Commissioner
Docket No. 8639-92
United States Tax Court
T.C. Memo 1993-558; 1993 Tax Ct. Memo LEXIS 569; 66 T.C.M. (CCH) 1429; November 24, 1993, Filed *569 Decision will be entered for respondent. For petitioners: Michael Leight. For respondent: Carlos Oviedo. NAMEROFF
NAMEROFF
MEMORANDUM OPINION NAMEROFF, Special Trial Judge: This case was heard pursuant to the provisions of section 7443A(b) (3) [1] and Rules 180, 181, and 182. Respondent determined a deficiency in petitioners' 1988 Federal income tax in the amount of $ 882, plus an addition to tax under section 6653(a)(1) in the amount of $ 44. The issues for decision are: (1) Whether travel credits in the amount of $ 3,149.93 received by Dr. Philip Charley (hereafter referred to as petitioner when used in the singular) constitute gross income under section 61(a); and (2) whether petitioners are liable for the addition to tax as determined by respondent. All of the facts have been stipulated and are so found. At the time of the filing of the petition *570 herein, petitioners resided in Seal Beach, California. Petitioners bear the burden of showing respondent's determinations to be erroneous. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933). During 1988, Truesdail Laboratories, Inc. (Truesdail) was a California corporation engaged in the testing business. Such testing included urine analysis for horse racing activities, the investigation of the causes of industrial accidents, chemical analysis, and related matters. In 1988, petitioner was the president of Truesdail, and, together with petitioner wife, owned a majority of the shares of Truesdail (approximately 50.255 percent of the total outstanding shares). Petitioner, who has various post-graduate degrees, [2] performed duties for the corporation which included, among other things, the inspection and investigation of mechanical devices suspected of failure. Petitioner wife was employed by Truesdail as a secretary. *571 Petitioner, in his capacity as an employee of Truesdail, traveled extensively by aircraft to various accident sites so as to conduct his inspection of machinery suspected of failure and investigate the cause of such accident. In 1988, Truesdail's "unwritten policy" regarding the ownership of "frequent flyer miles" accrued by its employees in connection with business travel paid for by Truesdail was that they became the sole property of the employee. During the year at issue, the following procedures were followed with respect to petitioner's air travel for Truesdail: (1) A client would engage the services of Truesdail and would direct that petitioner travel to a particular accident site; (2) If petitioner chose to travel to a particular site by air, Truesdail would bill the client for round trip first class air travel; (3) Petitioner would instruct a travel agent, Archer Travel Services (Archer), to arrange for coach service to and from the site, but, to bill Truesdail for first class air travel; (4) Truesdail would be billed for, and would pay for, first class air travel for petitioner. Petitioner would use his frequent flyer program benefits ("largely" earned in connection *572 with petitioner's business travel for Truesdail) to upgrade the coach ticket to first class air travel; and (5) Petitioner would instruct Archer to transfer to petitioner's personal travel account the difference in price between the first class ticket for which Truesdail paid and the coach ticket, albeit upgraded, which was actually used by petitioner.
During 1988, Archer maintained separate travel accounts for petitioner and Truesdail. Petitioner took the following business trips during the year at issue for which he received travel credits: Invoice
Amount paid by
Cost of
Amount credited
Truesdail
coach fare
petitioner's account
208113/114
$ 2,678.95
$ 1,065.90
$ 1,613.05
208853
870.00
450.00
420.00
223767
1,392.00
795.00
597.00
232576
1,433.88
914.00
519.88
Total credits:
$ 3,149.93
The parties have stipulated that petitioners did not believe that the receipt of the travel credits constituted taxable income as no one ever told them the receipt of travel credits was taxable and they did not read such. Additionally, the parties stipulated that petitioners did not intend to conceal the process utilized in obtaining the travel credits from anyone, *573 including respondent. Respondent contends that the travel credits received by petitioner constitute taxable income. Respondent argues in the alternative that the travel credits are a taxable fringe benefit, a gain from the sale of property (frequent flyer miles), or a constructive dividend. Petitioner, however, contends that the receipt of the travel credits was merely a nontaxable "transmutation" of his frequent flyer miles. We believe the travel credits received by petitioner constitute taxable income. Gross income includes all income from whatever source derived whether realized in the form of money, property, or services, unless otherwise excluded by law. Sec. 61(a); sec. 1.61-1(a)(1), Income Tax Regs. In the instant case, petitioner received travel credits worth $ 3,149.93. There is no indication in the record that petitioners could not use the accumulated travel credits for personal purposes nor, in fact, redeem the credits for cash on demand. There is no showing that Truesdail had any rights, interest, or control over petitioners' personal travel account. Whether we regard this fact situation as a straight "rip-off" by petitioner of his employer or a highly technical *574 "sale" of his frequent flyer miles (which have zero basis) for the credits, the fact remains that petitioner was wealthier after the transaction than before. In such circumstances, the accretion of wealth is the receipt of income. Accordingly, we sustain respondent on this issue. Section 6653(a)(1) imposes an addition to tax if any part of an underpayment is due to negligence or intentional disregard of rules or regulations. Negligence is defined as the failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985). Petitioner also has the burden of proof on this issue. Bixby v. Commissioner, 58 T.C. 757, 791 (1972). Based on this record, petitioners have failed to establish that they were not negligent. Notwithstanding the stipulated facts that no one told petitioners that the travel credits were taxable and that they did not read about the taxable nature of the travel credit transaction, there is no indication that they consulted either a lawyer or accountant regarding the taxability of the travel credits before omitting such income *575 from their tax return. Accordingly, we sustain respondent on this issue. To reflect the foregoing, Decision will be entered for respondent. Footnotes
1. All section references are to the Internal Revenue Code in effect for the year at issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Petitioner has a Ph.D. in both chemistry and engineering.↩